Martin, J.
delivered the opinion of the court.* The plaintiff states, he is the legal owner, for life, of two slaves, whom he acquired by purchase from F. A. Bynum, to whom they were adjudged at the sale of the estate of A. & M. Martin, deceased; and was in quiet possession of them when the present defendant brought a suit against him, for the possession of these slaves, and obtained a writ of sequestration, on which he gave bond and security that they should not be removed; and the present defendant afterwards obtained a decree, for the possession of the slaves ; and he, the present plaintiff, appealed and gave bond within the ten days. Notwithstanding which, and as the plaintiff believes, *374 through error, a copy of the decree was issued, and the sheriff accordingly delivered the possession of the slaves to the present defendant; whereupon, a writ of sequestration was prayed, and that the possession of the slaves might be restored.
West'n District.
Sept. 1822.
The district judge granted an injunction, and directed the slaves to be restored, on bond and security being given. This was regularly done.
The defendants pleaded the general issue.
In an amended petition, by leave of the court, the plaintiff stated, that he is the life owner of two slaves, Isham and Grace, by purchase from F. A. Bynum, to whom they were adjudged at the sale of A. & M. Martin’s estate; and that the defendant has taken possession of, and refused to deliver them; and the plaintiff prayed for their restoration and damages.
The defendant denied the plaintiff’s right to the slaves, and that they ever made part of A. & M. Martin’s estate; and averred, that he, the defendant, had been in possession of them for ten years, with title.
There was judgment for the plaintiff, decreeing that a writ of distringas issue. Both parties appealed.
*375 The statements of facts shows, that the following documents were introduced at the trial:
A. Martin’s inventory; sale of the estates of A. & M. Martin ; Bynum’s sale to the plaintiff, and the record of a suit, Mayes vs. Calvit.
Mulholland deposed, that in the winter of 1809 the defendant took the negroes to Natchez, from Mrs. Martin’s plantation. He thinks, they came over with the other negroes of the estate; and he does not believe they were taken clandestinely. Mrs. Martin and J. Martin, in their life-times, claimed the negroes. They were brought into this state in 1814. They were in the defendant’s possession, except when taken by the plaintiff.
Burgess deposed, that before the quarrel between the parties to the present suit, he heard the defendant say, the plaintiff had negroes in the crop; and afterwards he heard him say, that the plaintiff had taken his, the plaintiff's, negroes over the bayou, out of the crop.
Mulholland deposed, that he believes it probable that Mrs. Calvit brought over the negroes in 1813, during the winter. Grace is *376 about 17. His impression is, that a negro of the defendant, had her mother for a wife, and he gave a girl for the mother, without any child. This is from Mrs. Martin.
R. Martin deposed, that in 1809 the defendant came over to procure Sylva, the mother of Grace and Isham, by exchange. He was to return two children of the same size. He sent a girl in exchange for the mother, but not for the children. He has never sent any thing in return for the children. The negroes were taken away in the winter of 1809, and brought back in 1813 or 1814. He thinks, the negroes might have been demanded by Evertson; he was sent to do so, after the negroes were bought by the plaintiff from Bynum. He lived with the defendant, and attended to the crop. They had ten hands. The defendant had more negroes than the plaintiff. The negroes were always in the possession of the defendant, except when the plaintiff took them. All the negroes that were out, at the time of the sale, were brought home, except those. It was thought the defendant would not give them up; and, therefore, he was not asked to do so.
F. A. Bynum deposed, that about the time *377 he sold the negroes to the plaintiff, the defendant told the latter that, after that year, he would give possession of them. He understood they had made friends, and the plaintiff was to make a crop with the defendant, and a good one, as the condition of the negroes being given up. The plaintiff had two negroes, besides those the witness sold him.
Kilgour, a witness for the defendant, deposed, he knew the negroes in controversy since 1814, when Mrs. Calvit brought them over. He never knew the Martins to be in possession of them. The plaintiff had two negroes, and the defendant eight.
Scott deposed, that, at the time of the sale, the defendant loudly protested against it. At the time of making the inventory, they were described as in the defendant’s possession.
The testimony shows, that the slaves were, in 1809, on Mrs. Martin’s plantation, and that the defendant obtained possession of them, in the expectation of an exchange, which does not appear ever to have been effected, either by the delivery of the negroes he proposed to give, or by any act or deed of exchange, without which the property could not have passed to him.
Bullard for the plaintiff, Thomas for the defendant.
The documents show, they were inventoried as part of the property of Mrs. Martin; bought by F. A. Bynum, and by him sold to the plaintiff.
The defendant produces no title ; he cannot avail himself of the plea of prescription. The testimony shows, he recognised the slaves as part of Mrs. Martin's property, since he took them from her plantation on the assurance he would give her others for them.
The district court has been of opinion, from these facts, that the plaintiff ought to recover; and we are unable to say it erred.
It is therefore ordered, adjudged and decreed, that the judgment be affirmed with costs.

 Porter, J. did not join in the opinion, having been of counsel in the cause.